IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BLUE STAR LAND SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-17-931-C |
| | ) | |
| THEO C. COLEMAN; JEFFREY D. MORRIS; AMARA S. JOHNSON f/k/a AMARA SINCLAIR; and ROCK CREEK LAND AND ENERGY COMPANY, LLC, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Matthew C. Kane, OBA#19502
Bruce A. Robertson, OBA # 13113
RYAN WHALEY COLDIRON JANTZEN
 PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
Emails: mkane@ryanwhaley.com
          brobertson@ryanwhaley.com

*Attorneys for Defendants*

Defendants Theo C. Coleman, Jeffrey D. Morris, Amara S. Johnson and Rock Creek Land & Energy, LLC, respectfully file the instant Reply in support of their Motion to Dismiss and Brief in Support [Dkt. No. 34]. Here, Plaintiff had chosen to use overly broad terminology, making its accompanying allegations terminally defective as a matter of law and requiring dismissal of this case. In a nutshell, Plaintiff claims throughout its Complaint that "Trade Secret Information" include all propriety and confidential information – something that is clearly inaccurate and grounds for dismissal.[1]

### I. Plaintiff's Unfounded Allegations of Impropriety Relating to Defendants' Motion to Dismiss.

On Friday, October 27, 2017 at 4:56pm, Plaintiff sent the undersigned a "Safe-Harbor Notice for Rule 11 Violations."[2] In the correspondence (which was also sent to Devon's counsel), Plaintiff acknowledged that the reply was due today and for the first

---

[1] Given the centrality of Plaintiff's definitional deficiency to many of Plaintiff's various causes of action, and as it is the only grounds for federal jurisdiction, Defendants focus the Reply primarily on that issue (as Plaintiffs do in their Response). However, at least two additional points bear mention. (1) Blue Star specifically states that it does not allege a breach of fiduciary duty predicated "preparations to compete," while also contending it alleged Coleman and Morris used Blue Start's information competitively. Dkt. No. 39, p. 21, 23. It refers to the Verified Trade Secret Exhibit (3-46 at 12-18), which states that Defendants "apparently put this information to use in their preparations to compete." *Id.* at 13 (¶ 28). Thus, despite their current contentions, Plaintiff's citation provides Defendants did allege the breach of fiduciary duty related to preparations to compete and failed to allege Defendants actually used that information. (2) *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778, n. 10, addresses a duty of loyalty in the context of a Burk claim but simply does not authorize an independent tort for the breach of that duty.

[2] It is not clear what Plaintiff intended with its letter; however, it clearly does not satisfy any requirements under Rule 11. *See Roth v. Green,* 466 F.3d 1179, 1192 (10th Cir. 2006). Regardless, the undersigned and Ryan Whaley Coldiron Jantzen Peters & Webber take any such allegations with the highest level of seriousness, having the utmost respect for the integrity of the Court and the judicial process, and welcome the Court's inquiry into the matter.

time made allegations that Defendants' Motion to Dismiss was improper under Rule 11. Plaintiff advised that simply the filing of the Motion to Dismiss was generally improper because it did not like Defendants' use of a background section, it did not cite to *Iqbal/Twombly*, and it increased the cost of litigation. The reasonableness of the Motion to Dismiss can be determined on its face.

Plaintiff also complained about the timing of the Motion to Dismiss, apparently contending that Defendants filed in an attempt to avoid conducting a full investigation related to their use of the Dropbox account. Plaintiff is simply incorrect regarding the access to Dropbox, a topic to be fully addressed in Defendants' Response to Plaintiff's Motion for Expanded Injunction [Dkt. No. 38]. Further, Defendants simply do not see any plausible connection between the timing of the Motion and the request for a log from Dropbox (made in a timely fashion as a response to Plaintiff's request).

In an attempt to ascertain and potentially correct any specific issues in the Motion to Dismiss, the undersigned requested Plaintiff clarify any concerns related to factual statements made in the Motion to Dismiss that might need to be addressed in the Reply. Plaintiff did not identify anything from its correspondence but did quote from Dkt. No. 38, p. 21, which provides:

> Defendants maintained their position "regarding Defendants' access" to their Dropbox accounts and the Rock Creek folder from September 5th (seizure date) to the 12th (Seizure Hearing). (Dkt. 34 at 6 & n.2.) Defendants said that, in response to Blue Star's concern, they agreed to obtain and produce a Dropbox log showing access for September 5th through the 12th, noting that their agreeing to produce the Dropbox log was "<u>an easy decision since Defendants had never done so [accessed the account after September 8th]</u>."

(Dkt. 34 at 6 (emphasis added).) In fact, Defendants again said the Dropbox Log would show they did nothing wrong. (Dkt. 34 at 6 & n.2.)

This reinterpretation simply does not reflect what was stated in the Motion, adding brackets to Defendants' actual statement and completely misrepresenting the actual statement:

> Plaintiff continued to raise concerns regarding Defendants' access, so Defendants agreed both to a subpoena to Dropbox[2] and an agreed order not to utilize the purported trade secret information – an easy decision since Defendants had never done so.
>
> [2] Plaintiff subsequently informed Defendants that Dropbox would not accept a subpoena and asked Theo to personally submit a request to Dropbox for the information. Again, in the spirit of cooperation, Defendants agreed.

Dkt. No. 34, p. 6. Plaintiff further threatened that the filing of "any reply in support of [Rock Creek's] motion…will be making Blue Star's concerns actionable." Defendants, and counsel, have made every effort to be forthright and honest with the Court and will gladly revise any incorrect statements, if it ever appears such have been made.

## II.     The Court's *Ex Parte* Order Does Not Serve as Law of the Case.

The Court granted an *ex parte* order for seizure against Defendants based exclusively on the contentions alleged by Plaintiff, without any input from Defendants. [Dkt. No. 10]. Plaintiff now argues that Defendants should not be afforded the opportunity to challenge the efficacy of Plaintiff's *ex parte* allegations based on the law of the case doctrine, a conclusion wholly unsupported by law.

> Under the doctrine of the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988)…However, "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)…

3

*S & J Rentals v. Hilti, Inc.*, No. 17-CV-0159-CVE-FHM, 2017 WL 2992732, at *2 (N.D. Okla. July 14, 2017). More particularly, law of the case doctrine does not "apply to preliminary orders or orders issued *ex parte*…It is generally unfair to preclude a party from later arguing an otherwise legitimate objection when that party has not had any opportunity to initially voice the objection." *United States v. Pineda-Mendoza*, No. 2:11-CR-0320 WBS GGH, 2012 WL 4056829, at *2 (E.D. Cal. Sept. 14, 2012), citing *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 129(n.8) (1st Cir.2006) (preliminary orders); *Munro v. Post,* 102 F.2d 686, 688 (2nd Cir.1939) (*ex parte* order); *United States v. Palfrey,* 530 F.Supp.2d 343, 344 (D.D.C.2008) (*ex parte* order). Thus, Plaintiff cannot successfully contend that the law of the case somehow prevents the Court's review of the merits of Plaintiff's Complaint now that Defendants have identified the deficiencies in Plaintiff's representations to the Court in obtaining the *ex parte* seizure order.

### III. Plaintiff's Overly Broad Definition of "Trade Secret Information" is Terminally Defective.

Surprisingly, Plaintiff makes little more than passing reference to its fundamentally flawed definition of "Trade Secret Information," a term critical to the validity of its allegations. Plaintiff acknowledges that there are, in fact, controlling definitions of "trade secret," as found in the DTSA and the OUTSA. Plaintiff also apparently concedes that there are documents which are confidential and/or proprietary that do not meet the definition of a "trade secret." Yet, in the Complaint, Plaintiff simply lumps these two categories together, contending that any purportedly confidential or propriety document is "Trade Secret Information."

> trade-secret information, as a condition of their employment. That contract directs Blue Star staff as follows:
>
>> All data or information of whatever kind provided, divulged, or disclosed either directly or indirectly by [Blue Star] (or its clients and business associates, hereinafter all included as ["Blue Star"]) to Contractor (including, but not limited to, information or data pertaining to any prospective area or pertaining to any of [Blue Star's] leases or wells) and all data and information resulting from Contractor's work for [Blue Star], shall be the sole and exclusive proprietary information of [Blue Star]. Contractor shall treat said data and information with the strictest confidence and shall not disclose the same to others without written consent of [Blue Star] or until such information or data otherwise becomes public knowledge through no fault of Contractor…
>>
>> Without limiting the generality of the foregoing, Contractor warrants that he will not use any of [Blue Star's] proprietary information derived from the services performed for [Blue Star] or received from [Blue Star] in work performed for anyone else.
>
> (Exhibits 2, 3, and 4 at 1–2.)³ <u>Hereafter, all above-referenced protected information under the Contract signed upon hiring will be referred to as "Trade-Secret Information."</u> This term includes three sub-types: (a) Client-Specific Trade-Secret Information; (b) Blue Star Work Product; and (c) Blue Star Operating Information, which are discussed in further detail and are further explained in Blue Star's Verified Trade-Secret Exhibit to this Complaint (Exhibit 26).

A plain reading of the excerpt above unequivocally established that "Trade Secret Information" ***is*** the "all the above referenced protected information under the Contract signed upon hiring." Complaint, p. 8-9.³ Without even attempting to explain why its unambiguous definitional language does not control, Plaintiff argues that the actual

---

³ It is also worth noting that the contractual provision quoted by Plaintiff states that the contractor "shall treat said data and information with the strictest confidence and shall not disclose the same to others without written consent of Blue Star…" If Defendants have not in fact disclosed any such information, they have not "misappropriated" it under the terms of the contract.

definition can be found in a subsequent sentence that does not even attempt to define the term. Response, p. 6-7. The three categories Plaintiff subsequently lists are "Client Specific Trade-Secret Information," which specifically includes the term "Trade Secret Information" and thus is inherently overbroad and defective; "Blue Star Work Product," again a term which in no way limits itself to the statutory defintions of trade secrets; and "Blue Star Operating Information," which suffers from an identical defect.

> **VERIFIED TRADE SECRET EXHIBIT TO PLAINTIFF'S ORIGINAL COMPLAINT**
>
> This Verified Trade Secret Exhibit to Plaintiff's Original Complaint concerns Blue Star's "Trade-Secret Information."[1]
>
> A. What constitutes trade secret information under the law.
>
> 1. The Defend Trade Secrets Act protects as trade secret
>
> all forms of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through proper means by, another person
>
> ---
> [1] Any undefined, capitalized terms herein take the meaning set forth in Dkt. 1, the Verified Original Complaint and Request for Seizure.
>
> Exhibit 26
> VERIFIED TRADE-SECRET EXHIBIT TO PLAINTIFF'S ORIGINAL COMPLAINT    PAGE 1

While arguing Defendants "wholly ignore" the Verified Trade Secret Exhibit, Plaintiff itself ignores the fact that this exhibit (excerpted above) actually confirms the

6

defect in Plaintiff's defintion of "Trade Secret Information." Indeed, the Verified Trade Secret Exhibit explicitly provides that the term "Trade-Secret Information," is defined according to the "meaning set forth in Dkt. 1, the Verified Original Complaint and Request for Seizure." Exhibit 3-46, p. 1. Contrary to Plaintiff's suggestion, the Verified Trade Secret Exhibit, rather than somehow redefining the term, explicitly incorporates the overly broad version utilized and relied upon by Plaintiff in the Complaint. Response, p. 6. While the definitions from the DTSA and OUTSA are listed in Exhibit 3-46, p. 1-2, they are not subsequently referenced or used to "structure the extensive discussion that follows" (despite Plaintiff's contention in the Response, p. 6. Instead, the affidavit uses the defined term "Trade Secret Information" at least 18 more times in describing the subcategories themselves (producing a completely circular result) and never once refers to the statutory definitions.

Plaintiff's last effort to salvage its overly broad definition is by reference to the Court's Order Granting *Ex Parte* Seizure. As discussed above, this Order was issued *ex parte* upon only the unchallenged allegations of Plaintiff and thus is not law of the case. Moreover, the Court may revisit the Order as it deems appropriate given every order short of a final decree is subject to reopening at the discretion of the district judge. Regardless, the Court provides:

> review the contents for Blue Star's alleged Trade-Secret Information. As used herein, the Trade-Secret Information are those documents specifically identified by filename on Exhibits 1-2 through 1-8 and in Exhibit 26 (Trade-Secret Exhibit) of Plaintiff's Verified Complaint (Dkt #3).

7

Thus, the Order undisputedly provides that "Trade Secret Information *are those documents specifically identified by filename* on (1) Exhibits 1-2 through 1-8 and (2) Exhibit 26." Dkt. No. 10, p. 4. In other words, the Order defines Trade Secret Information as the specific documents identified in the listed exhibits – not some portion of those exhibits, not certain files within the exhibits, but *all* of the documents identified in those exhibits. However, as discussed in the Motion to Dismiss, p. 12-13, Exhibits 1-2 through 1-8 include files that are facially overbroad.

Indeed, Plaintiff acknowledges as much later in its Response, p. 15-17, when initiating a preemptive defense of its overly broad seizure application. Far from arguing that the definition of "Trade Secret Information" is "thankfully" clarified by the Court in its Seizure Order – i.e., the files listed in Exhibits 1-2 – 1-8 and 26 – as it has earlier in the Response, p. 7, Plaintiff now states it "could not have 'seized' any materials in the 'Stuff' folder selectively without capturing the entire location" and that "*the small number of personal files were simply those located together in the same folder*." Response, p. 15-16. Plaintiff thus concedes that the scope of the term "Trade Secret Information" utilized in its Complaint is overbroad, including documents that clearly are personal in nature and not in any way trade secrets.

Ultimately, while the Order's definition of "Trade Secret Information" based upon specific filenames is different that the definition utilized in the Complaint (predicated on contracts to which Defendants are not parties and a specific provision that does not even mention trade secrets), it again confirms Plaintiff's overbroad use of the term in its allegations. While a ticket for entry for the Cowboy Hall of Fame is required for admission

8

to that attraction, Plaintiff is claiming that a ticket to any museum (or any event at all for that matter) should provide access. Plaintiff simply cannot claim that Defendants have violated the DTSA and OUTSA based on a definition of Trade Secret Information comprised of "proprietary" information. Consequently, it is unable to state a valid claim under the DTSA and OUTSA.

### IV. The Iqbal/Twombly Standard Requires Dismissal of Plaintiff's Claims Predicated on the Overly Broad Definition of "Trade Secret Information."

The Supreme Court has provided substantial guidance as to the pleading standards at the motion to dismiss stage of which this Court is undoubtedly extremely familiar. Nonetheless, given Plaintiff's complaint that Defendants did not explicitly address the *Iqbal/Twombly* standard in their Motion, Defendants note that the Court is to look at issues like facial plausibility, assuming the facts alleged are true. *See e.g., Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "The Court takes the…well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible…" *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2013 WL 1231875, at *2 (D. Colo. Mar. 27, 2013). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008); *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting same).

Whether Plaintiff's definition of "Trade Secret Information" is considered as a factual allegation or within the context of the law establishing the elements of the claim, it

9

is simply overly broad and fails to meet the specific definitions of the DTSA and OUTSA as it is alleging, based on Plaintiff's definition, that Defendants took "all data and information resulting from Contractor's work," rather than "trade secrets" as contemplated under the acts. *See* Motion to Dismiss, p. 11. As a result, Plaintiff simply does meet the pleading requirements of *Iqbal/Twombly*.

Plaintiff has relied on an extremely onerous statute to bring a federal cause of action (and accompanying seizure) against Defendants. As such, Plaintiff should be required to comport with the explicit provisions of the DTSA and plead its Complaint accordingly. Presumably Plaintiff can seek to address this issue through leave to file an amended Complaint; if the Court allows such a repleading, Defendants would then have an opportunity to revisit the allegations made by Plaintiffs and evaluate their validity. The effect of Plaintiff's definitional choice on the propriety of its seizure is a different question, but one that can be addressed in appropriate briefing.[4]

For the reasons set forth herein and in Defendants' Motion to Dismiss, Defendants respectfully request the Court dismiss Plaintiff's Complaint in its entirety.

---

[4] Plaintiff also claims in its "Safe Harbor Notice for Rule 11 Violations" that Defendants are somehow acting wrongfully by reserving their right to contest the validity of the seizure (something the Court itself noted in the hearing, see Transcript [Dkt. No. 35], 16:17-19, 17:2-9), and requesting leave to conduct early discovery to ascertain the nature of the documents Plaintiff alleges are "trade secret" (requiring evaluation of the treatment of such materials by various entities). Contrary to its contentions as to other filings, in this instance, Plaintiff apparently contends Defendants must file a motion prior to conducting discovery to meet Rule 11 requirements. (Of note, Rule 11(d) explicitly excludes discovery motions.) Regardless, Plaintiff must establish trade secrets are at issue for a valid seizure, and Defendants believe reasonable grounds exist to challenge that assertion.

*s/Matthew C. Kane*
Matthew C. Kane, OBA#19502
Bruce A. Robertson, OBA # 13113
RYAN WHALEY COLDIRON JANTZEN
 PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
Emails: mkane@ryanwhaley.com
brobertson@ryanwhaley.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a notice of electronic filing to the following counsel of record:

Lauren Barghols Hanna – lauren.hanna@mcafeeteft.com
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102

Matthew Mitzner- matthew.mitzner@tklaw.com
Anthony J. Campiti – tony.campiti@tklaw.com
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201

*s/Matthew C. Kane*
Matthew C. Kane, OBA#19502
