IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BLUE STAR LAND SERVICES, )<br>)<br>Plaintiff, )<br>)<br>and )<br>)<br>DEVON ENERGY PRODUCTION )<br>COMPANY, L.P. )<br>)<br>Plaintiff/Intervenor, )<br>vs. )<br>)<br>THEO C. COLEMAN; JEFFREY D. )<br>MORRIS; AMARA S. JOHNSON f/k/a )<br>AMARA SINCLAIR; and ROCK )<br>CREEK LAND AND ENERGY )<br>COMPANY, LLC, )<br>)<br>Defendants. ) | No. CIV-17-931-R |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

Come now Defendants Theo C. Coleman, Jeffrey D. Morris and Rock Creek Land
and Energy Company, LLC ("Defendants") and for their answer to Plaintiff's Complaint
and deny each and every allegation in said Complaint unless expressly admitted herein.

1.     In response to the allegations in Paragraph 1 of Plaintiff's Complaint,
Defendants admit that Jeff and Theo founded Rock Creek Land & Energy Company on
April 24, 2017, although it was dissolved shortly after. In all other aspects, Defendants
deny the allegations contained in Paragraph 1 of Plaintiff's Complaint.

1-1.     In response to the allegations in Paragraph 1-1 of Plaintiff's Complaint (as
used herein, "1-1" refers to the second Paragraph 1 of Plaintiff's Complaint), Defendants

admit Blue Star provides land services and related work for various oil and gas exploration and production companies and that such business is predicated on the relationships between the principals of the company and its clients.

2.     In response to the allegations in Paragraph 2 of Plaintiff's Complaint, Defendants, based upon Plaintiff's representations and Defendants' information and belief, admit the two documents named by Plaintiff are included in the copies of emails and attachments Theo retained after his departure from Blue Star.  Included in such emails were various attachments, which Defendants believe may have included the named documents. Defendants deny having, in any way, stolen or sought out these documents or having accessed/utilized these documents since leaving Plaintiff's employment.  Defendants further deny that these documents contain trade secret information as defined by the laws of the United States and/or the State of Oklahoma.  In all other aspects, Defendants deny the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.     Defendants deny the allegations contained in Paragraph 3 of Plaintiff's Complaint and specifically note that, despite Plaintiff's claims, such materials were in fact emailed or provided by Blue Star and its clients to other Blue Star employees and/or contractors.

4.      Defendants deny the allegations contained in Paragraph 4 of Plaintiff's Complaint and specifically note that, despite Plaintiff's allegations, Jeff and Theo made multiple proposals to buy equity that were rejected by David Swafford, Blue Star's principal.

5.     Defendants admit they left Blue Star in April 2017 and started Rock Creek. In all other aspects, Defendants deny the allegations contained in Paragraph 5 of Plaintiff's Complaint and specifically note that, despite Plaintiff's allegations, Theo simply downloaded a .pst file containing his emails, which included various attachments, from the past year.  Defendants further note that in February 2017, Blue Star provided Theo with a new computer – transferring files during that period was related to continued company work while transitioning computers.  Defendants deny having, in any way, intentionally sought out or accessed/utilized any third-party documents since leaving Plaintiff's employment.

6.     Defendants deny the allegations contained in Paragraph 6 of Plaintiff's Complaint and specifically note that, after learning that Plaintiff contended Defendants had materials belonging to Plaintiff, Theo reached out to Mr. Swafford in an effort to ascertain what was at issue.  Swafford refused to answer or return the call to discuss these concerns. Additionally, Plaintiff, through counsel, demanded that Defendants destroy certain materials, although it was unclear what was actually at issue.

7.     Defendants deny the allegations contained in Paragraph 7 of Plaintiff's Complaint and specifically note that, after learning that Plaintiff contended Defendants had materials belonging to Plaintiff, Theo reached out to Mr. Swafford in an effort to ascertain what was at issue.  Swafford refused to answer or return the call to discuss these concerns. Instead, Plaintiff unnecessarily undertook this incredibly expensive and *ex parte* legal process.  Defendants further deny that these documents contain trade secret information.

8.     Defendants admit the Court has jurisdiction, but deny they possess any documents containing trade secret information.

9.     Defendants admit the Court has jurisdiction, but deny they possess any documents containing trade secret information or that Defendants have committed any act for which Plaintiff can establish liability or recover against Defendants.

10.    Defendants admit venue is appropriate here but deny the relevancy of the cited provisions in the Profit Sharing Agreements to venue as alleged, as Plaintiff has not alleged a contract claim.

11.    Defendants admit the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.    Defendants deny the allegations contained in Paragraph 12 of Plaintiff's Complaint.

13.    Defendants admit the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.    Defendants admit the allegations contained in Paragraph 14 of Plaintiff's Complaint.

15.    Defendants deny the allegations contained in Paragraph 15 of Plaintiff's Complaint.[1]

16.    Defendants are without sufficient information to admit or deny the allegations regarding Swafford's background.  However, based on information and belief

---

[1] On December 8, 2017, the Court dismissed Plaintiffs' allegations in the Compliant as to Amara Johnson.  Dkt. No. 65.

and relying on Plaintiff's representations, Defendants admit the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.    Defendants admit that Plaintiff's primary focus for business was on the oil and gas companies specified in paragraph 18 of Plaintiff's Complaint, with differing success with the various companies at different times during the economic cycle and professional cycle.  Defendants are without specific information to admit or deny the specific allegations of Plaintiff's regarding the thoughts, business, personal and other decisions or choices of Blue Star's clients and their representatives, in utilizing the services of Blue Star and therefore, deny the same.  In all other aspects, Defendants deny the allegations contained in Paragraph 17 of Plaintiff's Complaint and specifically deny Blue Star was in a unique position, apart from meaningful competition, in its business.

18.    Defendants admit that Plaintiff performs work for various entities in the oil and gas industry and that certain of those entities are named in Paragraph 18 (although not all of those entities are regular clients of Blue Star).  Defendants further admit that, while Blue Star only had a few contractors in its early years, it had grown to more than 80 when Defendants left the company and that Defendants were responsible for the relationships with several of the entities named in this Paragraph.  Defendants are without knowledge as to the express decision-making of Blue Star clients, although Paragraph 18 does express some non-exhaustive reasons they believe clients utilize Blue Star and other outside entities for their business purposes.  In all other aspects, Defendants deny the allegations contained in Paragraph 18 of Plaintiff's Complaint.

19. Defendants deny the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20. Defendants admit that Plaintiff generally enters into written agreements with clients that contain a variety of provisions, including those related to maintaining the confidentiality of client documents and conflicts of interest. In all other aspects, Defendants deny the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21. Defendants admit that many contractors (or the entities of such contractors) enter into the "contract" (or some similar version) quoted and referenced in Paragraph 21 of Plaintiff's Complaint. However, based on their lengthy employment at Blue Star, Defendants are aware that other contractors retained such information upon the cessation of their relationships with Blue Star. In all other aspects, Defendants deny the allegations contained in Paragraph 21 of Plaintiff's Complaint. Specifically, Defendants deny that "Trade-Secret Information" is properly defined.

22. Defendants admit they were hired out of college to work for Blue Star and ultimately became "managers" and, on October 1, 2016 "vice-presidents" of Blue Star. In all other aspects, Defendants deny the allegations contained in Paragraph 22 of Plaintiff's Complaint. Defendants specifically deny they were the only two managers during the referenced five-year period as there were a number of others that served in that capacity (including several individuals who left to open similar competing entities). Defendants further deny they received any substantial training from Swafford, particularly as they became managers.

23.     Defendants admit they entered into Profit Sharing Agreements, which expressly defined them as at-will employees, with either party having the right to terminate the agreement at any time. Defendants deny the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint and specifically note that, despite Plaintiff's allegations, Jeff and Theo made multiple proposals to buy equity in installments that were rejected by Swafford, and the agreements do not contain the provisions alleged by Plaintiff.

24.     Defendants deny the allegations contained in Paragraph 24 of Plaintiff's Complaint. The original file was a prospect roster created by Jeff in 2013 for Blue Star and in no way reflects any effort or even thought by Defendants of leaving Blue Star.

25.     Defendants deny the allegations contained in Paragraph 25 of Plaintiff's Complaint. As managers, Jeff and Theo utilized the roster to keep track of employees, day rates and projects being worked. Other financial estimates were added later to keep track and for budget purposes going forward, in an effort to improve Blue Star's financial outlook.

26.     Based on Plaintiff's express representations, Defendants admit Jeff created the roster on or about the time alleged. Defendants admit Swafford may have been away from the office on occasion for a variety of reasons, often without informing Jeff or Theo prior to his departure. In all other aspects, Defendants deny the allegations contained in Paragraph 26 of Plaintiff's Complaint, and specifically note, contrary to Plaintiff's allegations, that they were not vice-presidents until late 2016.

27.     Defendants deny the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.     Based on Plaintiff's express representations, Defendants admit the allegations regarding Theo's "google" searches contained in Paragraph 28 of Plaintiff's Complaint.  Defendants further admit that Theo downloaded a .pst file containing his emails.  Theo did not search out any specific emails containing alleged trade secret, proprietary documents or any other specific information.  Additionally, the referenced Exhibit 1-2 does not support Plaintiff's contention that Theo began significant copying of Blue Star documents to Dropbox in February 2017, as Exhibit 1-2 establishes that the vast majority of these materials were personal.  Defendants further note that in February 2017, Blue Star provided Theo with a new computer – transferring files during that period was related to continued company work while transitioning computers.  In all other aspects, Defendants deny the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.     Based on Plaintiff's express representations and Defendants' information and belief, Defendants admit that Theo downloaded a .pst file containing his emails in a manner similar to that alleged in Paragraph 29 of Plaintiff's Complaint.

30.     Defendants admit that Theo downloaded a .pst file containing his emails.  In all other aspects, Defendants deny the allegations contained in Paragraph 30 of Plaintiff's Complaint and specifically deny that the documents contain trade secret information or that Defendants utilized the information to cause harm to Blue Star or its clients, many of which Defendants had close relationships with over the years.

31.     Based on Plaintiff's express representations, Defendants admit Theo copied various documents, including the specific document identified by Plaintiff, to Dropbox. Defendants deny these documents contain trade secrets or that Theo utilized these

documents to cause harm to Blue Star or its clients, many of which he had close relationships with over the years.

32.     Based on Plaintiff's express representations, Defendants admit the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33.     Defendants admit to having a discussion with Swafford on April 21, 2017, during which they sought some equity share in the company or some sort of agreed-upon change to the current structure.  When Swafford summarily refused, without discussing any terms, Jeff, Theo and Swafford determined there was no option but for Jeff and Theo to leave Blue Star and start their own business.  Defendants deny the remaining allegations contained in Paragraph 33 of Plaintiff's Complaint, and specifically note there was no discussion regarding the Profit Sharing Agreements or the new project (which was between Theo and Swafford on April 19, 2017).

34.     Defendants admit that Jeff texted with his wife on the morning of April 21, 2017.  To the extent they are in context, those texts speak for themselves and do not reflect the allegations made by Plaintiff.  In all other aspects, Defendants deny the allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.     Defendants admit to having a discussion with Swafford on April 21, 2017, during which they sought some equity share in the company or some sort of agreed-upon change to the current structure.  When Swafford summarily refused, without discussing any terms, Jeff, Theo and Swafford determined there was no option but for Jeff and Theo to leave Blue Star and start their own business.  Defendants deny the remaining allegations

contained in Paragraph 35 of Plaintiff's Complaint, and specifically deny they made any demand for a 33% share.

36.     Defendants admit to having a discussion with Swafford on April 21, 2017, during which they sought equity share in the company or some sort of agreed-upon change to the current structure. When Swafford summarily refused, without discussing any terms, Jeff, Theo and Swafford determined there was no option but for Jeff and Theo to leave Blue Star and start their own business. Defendants deny the remaining allegations contained in Paragraph 36 of Plaintiff's Complaint, and specifically deny any conversations with the company named by Plaintiff regarding new work. Rather, Theo was approached by a friend he had known for more than a decade to handle land services for a new company the friend was creating.

37.     Defendants admit to having a discussion with Swafford on April 21, 2017, during which they sought some equity share in the company or some sort of agreed-upon change to the current structure. When Swafford summarily refused, without discussing any terms, Jeff, Theo and Swafford determined there was no option but for Jeff and Theo to leave Blue Star and start their own business. Defendants deny the remaining allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.     Based on Plaintiff's express representations, Defendants admit various texts were sent and that the content of those texts are reflected in the referenced exhibits. To the extent they are in context, those texts speak for themselves and do not reflect the allegations made by Plaintiff. Defendants deny the remaining allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.     Based on Plaintiff's express representations, Defendants admit various texts were sent and that the content of those texts are reflected in the referenced exhibits. To the extent they are in context, those texts speak for themselves and do not reflect the allegations made by Plaintiff. Defendants deny the remaining allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.     Based on Plaintiff's express representations and upon information and belief, Defendants admit Theo copied additional documents to Dropbox on the afternoon of April 21, 2017. Defendants further admit Theo submitted a notice of resignation on April 21, 2017, which, as requested by Swafford following the parties' acknowledgement that they would part ways, included an effective date of April 28, 2017. However, Defendants deny the effective date extended any fiduciary duty or obligation owed by Defendants past the meeting on April 21, 2017. Defendants deny the remaining allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.     Defendants admit Rock Creek Land and Energy Company was incorporated on April 22, 2017, which was subsequently dissolved a few weeks later. Defendants expressly deny any impropriety existed with regard to this activity.

42.     Defendants deny the allegations contained in Paragraph 42 of Plaintiff's Complaint. Specifically, Swafford emailed others at Blue Star about his wife's condition. By that time, Jeff and Theo were no longer receiving Blue Star emails from Swafford, consistent with the parties' understanding that Jeff and Theo were no longer part of Blue Star.

43.     Based on Plaintiff's express representations, Defendants admit various texts were sent and that the content of those texts are reflected in the referenced exhibits.  To the extent they are in context, those texts speak for themselves and do not reflect the allegations made by Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.     Defendants deny the allegations contained in Paragraph 44 of Plaintiff's Complaint.  Specifically, Defendants deny any conversations with the company named by Plaintiff regarding new work.  Rather, Theo was approached by a friend he had known for more than a decade to handle land services for a new company the friend was creating. The service contract at issue is a publicly available form from the American Association of Professional Landmen in which Plaintiff has no proprietary interest.  Theo only approached the company named by Plaintiff after Jeff, Theo and Swafford determined they would part ways.

45.     Defendants admit Jeff and Theo's resignation letters, as requested by Swafford following the parties' acknowledgement that they would part ways, included an effective date of April 28, 2017.  However, Defendants deny the effective date extended any fiduciary duty or obligation owed by Defendants past the meeting on April 21, 2017. Defendants deny the remaining allegations contained in Paragraph 45 of Plaintiff's Complaint.

46.     Based on Plaintiff's express representations and their information and belief, Defendants admit Jeff ran the searches alleged by Plaintiffs.  After Swafford had rebuffed Jeff's request to purchase his computer from Blue Star, Jeff sought means to remove purely

personal information from the device. Defendants deny the remaining allegations contained in Paragraph 46 of Plaintiff's Complaint.

47.    Defendants admit Theo and Swafford discussed an email being sent out to Blue Star employees and contractors regarding Jeff and Theo's departure. Jeff and Theo did not receive the email as they had already been removed from the Blue Star email group. Defendants deny the allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.    Defendants admit Theo sent the excerpted email. Defendants expressly deny any impropriety existed with regard to this activity. Defendants deny the remaining allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.    Defendants deny the allegations contained in Paragraph 49 of Plaintiff's Complaint. Jeff did not have actual knowledge of who would in fact be leaving Blue Star. Amara and Kory did not turn in their notice until Tuesday. The emails to clients provided the contact information for the appropriate supervisors at Blue Star– notably more of whom stayed with Blue Star than left to join Rock Creek). Jeff was acting wholly in Blue Star and Blue Star's clients' interests to ensure outstanding work was completed. Defendants expressly deny any impropriety existed with regard to this activity.

50.    Based on Plaintiff's express representations and their information and belief, Defendants admit the content of the quoted text. Defendants deny the remaining allegations contained in Paragraph 50 of Plaintiff's Complaint and specifically Plaintiff's contention that the text reflects some nefarious intent on Defendants' part but rather that Jeff had completed the type of task Swafford had requested they do after agreeing to their departure.

51.     Based on Plaintiff's express representations and their information and belief, Defendants admit Jeff ran the searches alleged by Plaintiffs and that the content of Theo's quoted email is accurate. Defendants deny the remaining allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.     Paragraph 52 of Plaintiff's Complaint does not allege Defendants actually did anything. However, to the extent the paragraph can be read to suggest Defendants deleted Blue Star emails from the Blue Star server or Office 365 and a response is required, Defendants deny the allegations contained therein.

53.     Based on Plaintiff's express representations, Defendants admit Theo accessed Office 365 on multiple occasions between April 20 and 25, 2017 (but believes he no longer had access after April 25, 2017). Otherwise, Paragraph 53 of Plaintiff's Complaint does not allege Defendants actually did anything. However, to the extent the paragraph can be read to suggest Defendants deleted Blue Star emails from the Blue Star server or Office 365 and a response is required, Defendants deny the allegations contained therein.

54.     Theo had maintained a Dropbox account for an extended period. At some point, he began using Dropbox to share business related materials, primarily large data files that a free Dropbox account could not accommodate, and Blue Star began paying the monthly fee. After the parties determined they would part ways, Theo changed his Dropbox email address to his personal email and changed the billing information to avoid Blue Star being assessed charges after he had left the company. Defendants deny the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.     Defendants admit Amara and Kory Cook informed Swafford they intended to leave Blue Star and that Swafford asked Kory to leave sooner as he intended to join Rock Creek. Defendants deny the remaining allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.     Defendants admit Swafford requested Amara stay on for an additional two weeks to assist with company operations given Jeff and Theo's departure, which Johnson did, in fact, do. While Amara would ultimately end up at Rock Creek for a period, she is moving to Florida to be with her fiancée. Defendants deny the remaining allegations contained in Paragraph 56 of Plaintiff's Complaint.

57.     While Kory had indicated an interest in coming to the new company with Defendants, he determined he would discuss his options at Blue Star first. Swafford offered a nominal pay increase while requiring Kory to undertake significant additional responsibilities. Thereafter, Kory decided he would join Jeff and Theo at Rock Creek. Defendants admit the content of the excerpted emails but deny the remaining allegations in Paragraph 57 of Plaintiff's Complaint.

58.     Defendants admit the content of the excerpted email (which was sent after Swafford had ordered Defendants to vacate the premises) but deny the remaining allegations in Paragraph 58 of Plaintiff's Complaint. Theo had brought in the company named by Plaintiff in December of 2016 and had the relationship with that entity's principal. As the agreements were project to project and could be abruptly terminated without cause, there was no reason for Blue Star to anticipate any ongoing relationship with the company named by Plaintiff after Theo departed.

59.    Defendants admit Jeff sought to disable various syncing features (given that Blue Star would not allow him to purchase his computer) but deny the remaining allegations in Paragraph 59 of Plaintiff's Complaint.

60.    Based on Plaintiff's express representations, Defendants admit Amara accessed her Rock Creek email on April 26, 2017. Defendants deny the remaining allegations in Paragraph 60 of Plaintiff's Complaint.

61.    Defendants admit they received the letter referenced in Paragraph 61, which inconsistently required them both to delete and return materials at issue, and that the letter speaks for itself (although Defendants deny the allegations contained therein). Defendants deny the remaining allegations in Paragraph 61 of Plaintiff's Complaint.

62.    Defendants admit that the contracts attached as Exhibits 2 & 3 to Plaintiff's Complaint include the quoted language. However, the contracts were between Blue Star and certain entities then operated by Defendants and were no longer in effect as they governed the relationship between those entities as contractors, and had been preempted when Defendants became employees. Defendants deny the remaining allegations in Paragraph 62 of Plaintiff's Complaint.

63.    Defendants admit they received the letter referenced in Paragraph 63. Based on Plaintiff's express representations, Defendants admit Amara performed the referenced search – a reasonable and expected inquiry given she had informed Blue Star she was leaving the company. Defendants deny the remaining allegations in Paragraph 63 of Plaintiff's Complaint.

64.     Based on Plaintiff's express representations, Defendants admit Amara performed the "google" searches alleged in Paragraph 64 of Plaintiff's Complaint – a reasonable and expected inquiry given she had informed Blue Star she was leaving the company.  Defendants deny the remaining allegations in Paragraph 64 of Plaintiff's Complaint.

65.     Based on Plaintiff's express representations, Defendants admit Amara performed the "google" searches alleged in Paragraph 65 of Plaintiff's Complaint – a reasonable and expected inquiry given she had informed Blue Star she was leaving the company.  Defendants deny the remaining allegations in Paragraph 65 of Plaintiff's Complaint.

66.     Based on Plaintiff's express representations and their information and belief, Defendants admit Amara accessed Blue Star's server and Office 365.  She was, at the time, continuing to carry out work for and on behalf of Blue Star.  Upon Plaintiffs' express representations, Defendants admit the content of the Dropbox support email but deny it has any relevance to the instant litigation.  Defendants deny the remaining allegations in Paragraph 66 of Plaintiff's Complaint.

67.     Defendants admit the allegations contained in Paragraph 67 of Plaintiff's Complaint.

68.     Defendants admit the allegations contained in Paragraph 68 of Plaintiff's Complaint to the extent it quotes the referenced letter.  The referenced letter further provides: "all copies of such information should be deleted from your computer(s), smart

phone(s) and/or any other electronic devices in your possession." Defendants deny the remaining allegations contained in Paragraph 68 of Plaintiff's Complaint.

69.     Defendants deny the allegations contained in Paragraph 69 of Plaintiff's Complaint. Defendants were genuinely confused by Plaintiff's letter and attempted to reach Swafford to gain clarification, but he refused to speak with them.

70.     Defendants deny the allegations contained in Paragraph 70 of Plaintiff's Complaint.

71.     The referenced letter speaks for itself (and notably makes no reference to purported "trade secrets"). Defendants deny the remaining allegations contained in Paragraph 71 of Plaintiff's Complaint.

72.     The referenced letter speaks for itself. Defendants deny the remaining allegations contained in Paragraph 72 of Plaintiff's Complaint.

73.     Defendants were not party to the conversation between counsel and thus are unable to confirm or deny the specific allegations regarding that conversation and thus deny the same. Defendants deny the remaining allegations in Paragraph 73 of Plaintiff's Complaint.

74.     Defendants were not party to the conversation between counsel and thus are unable to confirm or deny the specific allegations regarding that conversation. However, based on Plaintiff's express representations, Defendants admit the allegations contained in Paragraph 74 of Plaintiff's Complaint.

75.     Defendants admit the allegations contained in Paragraph 75 of Plaintiff's Complaint.

76.     Defendants admit to meeting with the company referenced by Plaintiff in Paragraph 76 of Plaintiff's Complaint about potential Blue Star work while Swafford was away on vacation.  At the time of the meeting, Defendants had no plans to leave Blue Star.  Defendants are unaware of the nature of the conversation between Swafford and that entity or why Swafford was unable to obtain its business.  That entity has not become a client of Rock Creek.  Defendants deny the remaining allegations in Paragraph 76 of Plaintiff's Complaint.

77.     Defendants admit that the entities named by Plaintiff in Paragraph 77 of Plaintiff's Complaint are or have been non-exclusive clients of Rock Creek.  Defendants deny the remaining allegations in Paragraph 77 of Plaintiff's Complaint.

78.     Paragraph 78 of Plaintiff's Complaint does not allege Defendants actually did anything.  However, to the extent the paragraph can be read to suggest Defendants shared client information with LEFCO and a response is required, Defendants deny the allegations contained therein.

79.     Paragraph 79 of Plaintiff's Complaint does not allege Defendants actually did anything.  However, to the extent the paragraph can be read to suggest Defendants shared client information with any third party and a response is required, Defendants deny the allegations contained therein.

80.     With the exception of Jason Malone, Defendants admit the individuals listed worked or have worked as at-will employees or contractors for Rock Creek.  Defendants deny the remaining allegations in Paragraph 80 of Plaintiff's Complaint.

81.     Defendants deny the allegations contained in Paragraph 81 of Plaintiff's Complaint.

82.     Defendants admit Ernst & Young has collected electronic documents related to this case.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 82 of Plaintiff's Complaint and thus deny the same.

83.     Defendants admit Ernst & Young has collected electronic documents related to this case.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 83 of Plaintiff's Complaint and thus deny the same.

84.     Defendants admit Ernst & Young has collected electronic documents related to this case.  Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 84 of Plaintiff's Complaint and thus deny the same.

85.     Defendants admit Ernst & Young has collected electronic documents related to this case and Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 85 of Plaintiff's Complaint and thus deny the same.

86.     Defendants admit Ernst & Young prepared an affidavit that is attached to the Complaint.  Defendants deny the remaining allegations contained in Paragraph 86 of Plaintiff's Complaint.

87.     Defendants deny the allegations contained in Paragraph 87 of Plaintiff's Complaint.

88.     Defendants deny the allegations contained in Paragraph 88 of Plaintiff's Complaint.

89.     Defendants deny the allegations contained in Paragraph 89 of Plaintiff's Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of Plaintiff's Complaint.

91.     Defendants deny the allegations contained in Paragraph 91 of Plaintiff's Complaint.

92.     Defendants deny the allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.     Defendants deny the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.     Defendants deny the allegations contained in Paragraph 94 of Plaintiff's Complaint.

95.     Defendants deny the allegations contained in Paragraph 95 of Plaintiff's Complaint.

96.     Defendants deny the allegations contained in Paragraph 96 of Plaintiff's Complaint.

97.     Defendants deny the allegations contained in Paragraph 97 of Plaintiff's Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of Plaintiff's Complaint.

99.     Defendants deny the allegations contained in Paragraph 99 of Plaintiff's Complaint.

100.    Defendants deny the allegations and the specific relief requested in Paragraph 100 of Plaintiff's Complaint.

101.    Defendants deny the allegations contained in Paragraph 101 of Plaintiff's Complaint, and to the extent it incorporates Plaintiff's Motion for Seizure, the allegations contained therein.

102.    Paragraph 102 of Plaintiff's Complaint simply demands a jury trial and thus does not require a response.  To the extent it can be read to suggest Plaintiff's claims are legally sufficient to survive a motion for summary judgment and/or other pretrial motions, such allegations are denied.

103.    Defendants deny the allegations and the specific relief requested in the Prayer of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

1.    Failure to state a claim upon which relief can be granted.

2.    Failure to mitigate.

3.    Estoppel/waiver.

Respectfully Submitted,

*s/Matthew C. Kane*

Matthew C. Kane, OBA#19502
Bruce A. Robertson, OBA # 13113
RYAN WHALEY COLDIRON JANTZEN
  PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
Emails: mkane@ryanwhaley.com
        brobertson@ryanwhaley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a notice of electronic filing to the following counsel of record:

Lauren Barghols Hanna – lauren.hanna@mcafeeteft.com
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102

Matthew Mitzner- matthew.mitzner@tklaw.com
Anthony J. Campiti – tony.campiti@tklaw.com
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201

John J. Griffin, Jr. – john.griffin@crowedunlevy.com
Harvey D. Ellis- harvey.ellis@crowedunlevy.com
L. Mark Walker- mark.walker@crowedunlevy.com
Crowe & Dunlevy, A Professional Corporation
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102

*s/Matthew C. Kane*
Matthew C. Kane, OBA#19502